## Case No. 6,233.

### The HAVRE.

### The SCOTLAND.

[16 Blatchf. 427.][1]

Circuit Court, S. D. New York.  June 24, 1879.[2]

COLLISION OF SAILING VESSELS—PRIVILEGED TACK.

Where there has been a collision between two sailing vessels, and one of them was on the privileged tack, and the other alleges that the former was in fault for keeping her course, she must show that there was time for the former, after the risk of collision was apparent to her, to avoid the collision by changing her course; and, in this case, the latter having been in peril, the failure of the former to take a step in extremis of that character, was held not to have been a fault.

[Cited in Farwell v. The John H. Starin, 2 Fed. 108.]

[Appeal from the district court of the United States for the Southern district of New York.]

These were cross libels, filed in the district court, for a collision between the ship Havre and the bark Scotland. That court [Case No. 6,232] decreed that both vessels were in fault. The Havre appealed. The

facts found by this court were as follows: "The ship Havre was, at about nine o'clock, p. m., of January 20th, 1866, proceeding on a voyage from Malaga, in the kingdom of Spain, to the port of New York. The position of the ship, at that time, was about thirteen miles south by east of the light-ship off Sandy Hook. She was then on pilot ground, and in charge of a licensed Sandy Hook pilot. All the officers of the Havre and her entire crew, which consisted of twenty men, all told, (such being a full crew for the said ship), were on deck, a lookout properly stationed, and her lights, as established by law, properly set and burning brightly. The night was clear and starlight, and a ship's light could be seen at a distance of from two to three miles. The wind was from west north-west to north-west by west, fresh, and the sea moderate. The Havre was heading about south-west, by the wind (i. e., close-hauled), and was on her starboard tack. She had been on such tack since about half-past eight p. m., and continued on that tack until the collision occurred. The Havre was under the following sails, viz., full maintop sail, two reefs in the mizzentop sail, one reef in the foretop sail, full foresail, foretopmaststay sail, and full mizzen or spanker. Her speed was about eight knots per hour. At the time and under the circumstances above referred to, the lookout on board the Havre reported a green light about two points on her lee bow, and the pilot and officers of the Havre immediately took its bearing, viz., south south-west, and distant between two and three miles. It proved to be the starboard light of the bark Scotland, on her voyage from Apalachicola, in Florida, to the port of New York. The Scotland was then on her port tack, and heading about north by east, by the wind, and moving at a speed of about two and a half knots per hour. The green light of the Scotland continued in sight for about ten minutes, when her red light came in view and continued in sight for about three or four minutes, when it suddenly disappeared and her green light alone remained in view, the Scotland luffing up in the wind and trying to cross the bows of the Havre, when the collision immediately followed, the Havre's jibboom striking about the middle of the starboard mizzen rigging of the Scotland. The Scotland then slewed round to the southward, and, after remaining in contact for some time with the Havre, got clear. From the moment the green light of the Scotland was first seen to the moment of collision, the pilot, the first officer and the lookout of the Havre continued to watch the said green light and the red light of the Scotland, as they respectively came into view, and, during all such time, the Havre was kept steady on her course. The Scotland was under shortened sail, and had on board a deficient crew, which only consisted of five seamen besides two mates and a cook, whereas she

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

[2] [Reversing Case No. 6,232, with reference to The Havre.]

ought to have had eight seamen. Had the Scotland continued her course when her green light was first seen, she would have cleared the Havre by crossing her bows and weathering her, and, had she continued her course when her red light came into view, she could have also then cleared the Havre by falling off a little to leeward, and passing astern of the Havre. Her second change of course, however, (by which she presented her green light again), luffing up in the wind, and trying then to cross the bows of the Havre, caused the collision. After such second change of course there was nothing which could have been done on board the Havre to avoid the collision, as but a minute or two elapsed between the change of course and the collision. The lookout on the Scotland was negligent in not discovering the lights on the Havre sooner than he did, and, as matter of fact, he did not discover them until within about one-eighth or a quarter of a mile off."

Joseph Larocque, for the Scotland.
Charles M. Da Costa, for the Havre.

BLATCHFORD, Circuit Judge. The libel against the Havre was filed February 5th, 1866. The libel against the Scotland was filed February 9th, 1866. They are cross libels for a collision which took place between the two vessels during the night of January 20th, 1866. The answers of both vessels were filed April 7th, 1866. The Scotland was bound from Apalachicola to New York; the Havre from Malaga to New York. The place of collision was in the Atlantic Ocean, from ten to fifteen miles southerly and easterly from Sandy Hook. The district court found the Scotland in fault for not having sooner discovered the green light of the Havre. The Scotland was on the port tack, heading north by east. The Havre was on the starboard tack, heading about south-west. The wind was about north-west by west. It was the duty of the Scotland to keep out of the way of the Havre. The Havre discovered the green light of the Scotland about two points on her port bow, some two miles off and about fifteen minutes before the collision. The Scotland did not discover the green light of the Havre until the vessels were not over a quarter of a mile apart. The Scotland was going not over three knots an hour, the Havre eight. The Havre struck the starboard side of the Scotland some fifteen feet from the stern of the Scotland. In the district court it was contended for the Scotland, that, while the Havre was passing to leeward of the Scotland, she luffed up into the wind from about abeam of the Scotland, and had her sails shaking when she struck. The district court discarded that view, and held, that the Havre kept her course by the wind from the time she discovered the green light of the Scotland, and that the Scotland was crossing the track of the Havre, in front

of the Havre, when struck by the Havre. The district court held, that the Scotland, being on ground frequented by vessels, and being under short sail and moving at a low rate of speed, and, therefore, unable to obey her wheel promptly, and being on her port tack, was bound to exercise great vigilance in looking out for approaching lights, so as to be able to take timely measures to keep out of the way of all crossing vessels on the starboard tack; and that, if she had exercised proper vigilance, she would have sooner discovered the green light of the Havre, and could, without difficulty, have kept out of her way. But the district court held the Havre also in fault. From the time the green light of the Scotland was first seen by the Havre, it continued in sight for from seven to twelve minutes, no other light being visible from the Scotland to the Havre. During all that time the Havre supposed that the Scotland intended to go across the bow of the Havre, from leeward to windward. At the end of that time, the Scotland showed her red light to the Havre, whether with the entire disappearance of the green light or not is not quite clear. This produced the impression on board of the Havre that the Scotland had ported, to pass to leeward of the Havre. Soon afterwards, however, the red light of the Scotland went out of sight, and the green remained in sight, indicating to the Havre that the Scotland was not going to pass to leeward of the Havre. But the district court came to the conclusion, that, from the time the green light of the Scotland began to reappear and her red light to disappear, there was time to have starboarded the helm of the Havre; that, if this had been done, she would have fallen off to leeward and have cleared the Scotland; and that she was in fault for not having done so. The elements making up this fault on the part of the Havre were found by the district court to be, that the Havre was easily handled; that she was under favorable speed for the purpose; that she had no one on the lookout forward at the time the green light of the Scotland reappeared; that her lookout, who had reported the green light originally, had gone aft; that her pilot had gone to the weather side of the vessel to look after other possible sails; and that the coming into sight of the red light of the Scotland after her green light had come into sight, was notice that there might be danger and that the utmost vigilance was incumbent on the Havre. The conclusion arrived at by the district court was, that, if the lookout had kept his post and had reported every change in the Scotland's lights as soon as each change was visible, her wheel could and would have been put up in time to have avoided the collision. The district court while recognizing the duty incumbent on the Havre to keep her course, because it was the duty of the Scotland to keep out of the way of the Havre, dissented, likewise, from the proposition that the Havre was bound to al-

ter her course simply because a collision was probable. The view of the court was, that risk of collision was apparent to the Havre for several minutes before it actually took place; that the Havre was bound to keep her course until it was apparent that the collision could not be avoided without a change on her part; that she was to be held responsible on the sole ground that, after it was clear that the only way to escape was for her to starboard her wheel, she failed to do so; and that, if she had done so, no accident would have occurred.

A careful examination of the evidence makes it impossible for me to concur in the conclusions of the district court, as to the fault of the Havre. The Scotland has not appealed. The Havre has appealed. The decision below is, therefore, not in question so far as the Scotland was held in fault.

It is contended, for the Havre, that the time which elapsed between the showing of her green light by the Scotland the second time and the actual collision was so short, that, during that time, it was impossible for the Havre to perform any manoeuvre, either to avert the collision or to lessen its effect. As the Havre was on the privileged tack, it is incumbent on the Scotland to show that the Havre could have performed such a manoeuvre. Still more is this burden imposed on the Scotland when she admits her own fault by not appealing from the decree. I do not think the evidence shows that there was time, during the interval referred to, for the Havre to have effectually done anything to avoid the collision. Moreover, the Havre being on the privileged tack and bound not to do anything to baffle the Scotland in the discharge of her duty of avoiding the Havre, and the Scotland being in fault for the collision, the failure of the Havre to take a step in extremis, of the character insisted on, must be classed as an error of judgment only, and not as a fault. The responsible officers in charge of the Havre testify, that, being of opinion they could not avoid the collision by putting their helm either way, they held their course. Their testimony should have great weight, and there is no sufficient countervailing evidence.

Notwithstanding the stress laid by the court below on the remission of vigilance on the part of the lookout and of the pilot of the Havre, I do not think it appears that these circumstances contributed to the collision. After the first light of the Scotland was reported to and seen by the officers in charge of the Havre, there was continuous and adequate observation on their part of the various lights shown by the Scotland, especially in view of the fact that the Havre discharged her duty by keeping her course.

It is impossible to attribute any fault to the Havre in respect of the rate of speed at which she was sailing. Nor is it established by the evidence that the Havre luffed up into the wind or changed her course at all.

The libel against the Havre must be dismissed, with costs to her both in the district court and in this court. In the suit against the Scotland there must be a decree for the libellants for the amount reported by the commissioner as the amount of their damages, with interest as reported, and for the costs of the suit both in the district court and in this court.